456 So.2d 735 (1984)
John Henry WARREN
v.
STATE of Mississippi.
No. 55070.
Supreme Court of Mississippi.
September 5, 1984.
*736 Jerry L. Mills, Pyle, Harris, Dreher & Mills, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J. and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
John Henry Warren, was convicted in the Circuit Court of the First Judicial District of Hinds County, Mississippi, under Mississippi Code Annotated § 97-3-65 (Supp. 1983), of forcible rape, and the jury by its verdict prescribed and the court sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections. He appeals, claiming that the verdict was against the overwhelming weight of the evidence.
We affirm.
About 1:00 o'clock in the morning of June 25, 1982, the prosecutrix was awakened by a man putting a knife to her neck and demanding that she engage in sexual relations with him. Her pleas were unavailing as she attempted to convince him not to hurt her or the children in the house with her, including the child who was asleep in the bed beside her. In spite of this, and without her consent, the rape was accomplished. The prosecutrix submitted because of the presence of the knife and out of fear for her own safety and the safety of the children.
After the assault had concluded, the man took out a cigarette lighter, lit a cigarette, sat on the side of the bed smoking and conversing with the victim for about five minutes. He even asked her if he could come back again, saying that he would like to get to know her better. Then he left.
The prosecutrix described her assailant as weighing about 215 pounds, 6' 4" in height, and having hair on the chin like a goatee. She saw him by the light of the street light after he had left the porch of her home. On the night of the attack, he wore a blue flannel shirt and blue jeans.
Two months later, this same man returned. The prosecutrix was sitting on the nearby porch of her mother's home when she saw the man come to her house. The man approached her at her mother's house, and asked if she was [name omitted], claiming he knew her through a mutual friend. He said he wanted to get to know her better. The prosecutrix testified that she recognized her assailant by his physical appearance, his voice and the very words which he had spoken to her on the night he had raped her.
When the prosecutrix's mother got up and went into the house, the man immediately left. He was later apprehended by the brother of the prosecutrix and ultimately arrested by the police. The prosecutrix identified John Henry Warren in the courtroom as the man who raped her on June 25, 1982.
The brother of the victim, testified that on the night of June 25, 1982, his sister came to his house in the early morning hours and told him that she had just been raped. She described her attacker as being tall, heavy-set, with a goatee, wearing a blue flannel shirt and blue jeans. The prosecutrix's brother immediately searched the area and upon seeing a man meeting that description called out to him to stop. When the man did not stop, the prosecutrix's brother went to a nearby convenience store and called the police. He did not again on that night find the man that he thought matched the description given by his sister.
On August 21, 1982, the prosecutrix again came to her brother for help in catching the man who had raped her. On this occasion, her brother was successful and held the man until the police arrived. The prosecutrix's brother identified the defendant, John Henry Warren, as the man he stopped in August of 1982.
Tommie Giles, a neighbor of the victim, was walking home some time after midnight on the night of June 25, 1982. At the corner of Pleasant Avenue and Wood Street he encountered a black man who *737 was about 6' 5" tall, weighing 200-225 pounds and of medium complexion. Giles got a light for his cigarette from the man, and testified that he recognized him as someone whom he had seen previously in the neighborhood.
After learning what had happened to the prosecutrix and after hearing the description of her assailant, Giles remarked that he had met someone fitting that description whom he had seen before on that very night. Two months later, in August, the same man Giles saw the night the prosecutrix was raped, was apprehended by the police and Giles identified him as the defendant, John Henry Warren.

WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Appellant concedes that Mississippi generally recognizes that the testimony of a person having heard a voice is competent and legitimate evidence to establish identity in both civil and criminal cases. Sparks v. State, 412 So.2d 754 (Miss. 1982). However, appellant contends that in every case in Mississippi with the issue of voice identification in this state there has been substantial other evidence of guilt, and that as there is no substantial other evidence of guilt in this case the case is distinguishable and the verdict is rendered against the overwhelming weight of the evidence.
In Pickett v. State, 164 Miss. 142, 144 So. 552 (1932), the appellant points out that the time interval elapsing from the time of the crime to the voice identification was only one day as contrasted to two months in this case.
In Lee v. State, 242 Miss. 97, 134 So.2d 145 (1961), the complaining witness was approached by three men at 3:00 o'clock in the afternoon. She had the opportunity to see and hear each of the three for about thirty minutes before a pillow case was placed over her head and she was raped. Though she was unable to see who raped her, she was able to identify the defendant from having so recently seen him and heard his voice. Appellant contends that there the victim got a view of the defendants and heard their voices for some thirty minutes, while in the case sub judice the prosecuting witness heard the voice of the appellant for only about fifteen minutes and did not hear it again for some two months.
In Hurst v. State, 240 So.2d 273 (Miss. 1970), the defendant was convicted of using profane and indecent language over the telephone. There too the identification of his voice was held competent. Appellant would have us distinguish Hurst on the basis that the complaining witness had received a number of indecent telephone calls made by the same voice. Also, there was other substantial evidence of guilt in that case.
In Lindsey v. State, 279 So.2d 913 (Miss. 1973), the testimony of voice identification was again held admissible. The case can be distinguished factually, however, because there the evidence established that the complaining witness was familiar with the voice of the defendant. He lived near her home and over a period of two years she had heard him speak on several occasions. In the case sub judice, the prosecuting witness had never seen nor heard the appellant before the night of the rape, and did not hear him speak again until some two months later when he was arrested.
In Sparks v. State, 412 So.2d 754 (Miss. 1982), this Court again recognized the general rule with respect to voice identification. However, once again the identification was based on familiarity through numerous subsequent conversations.
Based on his characterization of these voice identification cases, the appellant suggests that, unless it is established that voice recognition is based on some criteria or is done at a point so close in time as to make it reliable, testimony regarding it is simply insufficient to send a man to the penitentiary for life absent other substantial additional evidence of guilt.
This contention is simply without merit. While there are substantial differences in time in the cases cited by the appellant and *738 the case sub judice, there is no authority for the proposition that the element of time has any application as to the validity or sufficiency of voice identification.
The test in Mississippi of the validity and competence of evidence of identification through voice recognition is a question for the jury to determine. Sparks v. State, supra, and Pickett v. State, supra.
The cases cited by the appellant himself clearly leave in the hands of the jury the probative value of voice identification testimony. Here the jury judged the value of the testimony, found the appellant guilty, and agreed that he should spend the rest of his natural life in the custody of the Department of Corrections.
As we stated in Pate v. State, 419 So.2d 1324, 1326 (Miss. 1982):
Generally, it is the function of the jury to pass upon the weight and worth of the evidence and to determine the credibility and veracity of the witnesses. Ivey v. State, 206 Miss. 734, 40 So.2d 609 (1949); Henderson [v. State, 187 Miss. 166, 192 So. 495 (1939)] supra. Indeed, the jury is under no duty to believe the defendant's denial where there is ample contradictory evidence. Campbell v. State, 278 So.2d 420 (Miss. 1973); Robinson v. State, 228 So.2d 373 (Miss. 1969). Thus, this Court has previously held that it will not set aside a jury verdict of guilty unless it is clear that the verdict is the result of prejudice, bias, or fraud, or that it is manifestly against the weight of the evidence. Marr v. State, 248 Miss. 281, 159 So.2d 167 (1963); Clanton v. State, 49 So.2d 267 (Miss. 1950).
In reviewing the evidence and challenges to the sufficiency of the evidence to support a conviction, the basic rule, restated in Carroll v. State, 396 So.2d 1033, 1035 (Miss. 1981), is that:
[T]he Court is required to accept as true all the evidence favorable to the State, together with reasonable inferences arising therefrom, to disregard that evidence favorable to the defendant, and, if such evidence will support a verdict of guilty beyond reasonable doubt, the peremptory instruction should be refused. [Citations omitted].
The evidence presented by the state in this case is more than ample to support the verdict of the jury.
The appellant further contends that the jury's verdict, including the sentence portion, must be supported by competent evidence and that the sentence in this case was against the overwhelming weight of the evidence. Appellant contends that this is so because no evidence was adduced which was related to the factors upon which a sentencing decision should be based, and, therefore, the verdict of the jury must be contrary to the weight of the evidence. The question raised by the appellant is not whether a jury instruction should have been granted but does the sentence portion of a jury's verdict have to be based on evidence or is each sentencing jury free to impose a sentence of life imprisonment on whim and caprice?
We cannot find from a study of the record of this trial that this issue was ever presented squarely to the trial court, and we will not hold the trial court in error where the issue was not presented to him. Ponder v. State, 335 So.2d 885 (Miss. 1976).
Assuming arguendo that this issue was squarely before us, it is without merit. This is so by virtue of the very language of § 97-3-65 Mississippi Code Annotated (Supp. 1983), which says in part in paragraph 2 thereof:
..., upon conviction shall be imprisoned for life in the state penitentiary if the jury by its verdict so prescribes; ...
This is not a situation in which the jury is called on to make a determination about the mitigating or aggravating circumstances. The Legislature has prescribed that, should the jury agree, then the sentence for rape under § 97-3-65 shall be life imprisonment. If the jury cannot agree, then the court shall affix the penalty at imprisonment in the state penitentiary for any term as the court in its discretion may *739 determine less than life. There is no merit to this contention.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
PATTERSON, C.J., not participating.