446 So.2d 1012 (1984)
Mrs. Willie C. HARRIS & Alma Staten
v.
Buford C. SELLERS, Sr., Executor of Estate of Doris C. Pavlica, Deceased.
No. 54142.
Supreme Court of Mississippi.
March 7, 1984.
Paul D. Snow, III, Jackson, for appellant.
Alan M. Purdie, Gore, Gore & Purdie, Grenada, for appellee.
Before ROY NOBLE LEE, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
The burden of proof in a will contest suit is the subject matter of this appeal. The contestants are Mrs. Willie C. Harris and Mrs. Alma Staten, who challenge the validity of the will of Mrs. Doris Pavlica, their sister. The basis for the contest is the undue influence exerted by their nephew *1013 and sole beneficiary, Buford C. Sellers. The chancery court held that a confidential relationship existed between the nephew and the testatrix at the time the will was executed, but that there was no proof of undue influence. The chancellor sustained the proponents' motion to exclude the contestants' evidence and to dismiss the suit made at the conclusion of contestants' proof.
The assignments of error are that the chancery court erred in:
(1) Sustaining the appellee/proponents' motion to dismiss in absence of proof by clear and convincing evidence that there was no undue influence;
(2) Refusing to allow hospital records into evidence; and
(3) Excluding testimony of contestants under the "Dead Man's Statute."
We reverse and remand this case for retrial.

I.
Buford C. Sellers, of Oakland, and nephew to the testatrix and the contestants, is pastor of a church and principal of an elementary school. At the request of his aunt, Mrs. Doris Pavlica, he held a power of attorney over her business affairs from December 4, 1980 to the date of her death on May 26, 1981. During this interval, he assisted her in selling her home, although she signed the deed herself. Sellers placed the house sale proceeds in joint accounts with his aunt. Admission of the existence of a confidential relationship with his aunt was made by Sellers in his testimony.
Regarding the execution of the will, Sellers testified he brought his aunt to his home from the hospital in December when her insurance benefits ran out. Previously she asked Sellers to prepare a will for her, and again in December, 1980, she repeated that request.
On December 26, 1980, Sellers prepared a will using a form will mailed to him from his church organization for promotion of "Make Your Will Month." He typed the will making himself sole beneficiary; in the event of Seller's demise prior to the testatrix's death, the sole beneficiary was Helen J. Sellers, Sellers' wife. Mrs. Pavlica requested that Buford Sellers be named sole beneficiary; no testimony was offered concerning the designation of the alternative beneficiary. Sellers secured two employees from the Bank of Oakland to witness the execution of the will in the kitchen of his home.
A prior will of Mrs. Pavlica named her sisters, the contestants, as beneficiaries. The contestants lived a long distance from Mrs. Pavlica.
In the spring of 1981 Mrs. Pavlica returned to the hospital when insurance benefits were restored.
The contest of this will was based on allegations of undue influence of Sellers, mental incapacity of the testatrix, and insufficient execution required by law.

II.
The first assignment addresses the issue of whether the chancellor misapplied the law in determining upon whom the burden of proof of undue influence is placed where a confidential relationship exists.
Admittedly by the proponent, a confidential relationship existed between the testatrix and the beneficiary. At the conclusion of contestants' proof the chancellor's bench opinion recited that "in order for this will to be declared, or the court to find against the will, clear and convincing evidence must be present that that will is, in fact, invalid, either by undue influence or ... did not meet the requirements of the statute... . The court is of the opinion that the requisite burden has not been met in order to void the will... ."
Upon inquiry by the contestants' attorney, the chancellor stated that "the executor had the burden of proof." The chancellor sustained the proponents' motion to exclude contestants' testimony and to dismiss suit. The order executed pursuant to the bench opinion recited that "a confidential fiduciary relationship existed between them; that there was a strong presumption *1014 created by law against the validity of the will and that the burden of proof to establish the will ... remained upon the proponent; the court finds that this presumption was overcome by the clear and convincing credible testimony offered by the contestants themselves."
In the record, it appears that the chancellor in his bench opinion misapplied the burden of proof, although he vocalized it properly.
Mississippi Code Annotated section 91-7-29 (1972) establishes the burden of proof. "On the trial of (issue devisavit vel non), the proponent of the will shall have the affirmative of the issue... ." Our case law has followed that mandate. Sheehan v. Kearney, 82 Miss. 688, 21 So. 41 (1896); Ellis v. Ellis, 160 Miss. 345, 134 So. 150 (1931).
The Sheehan v. Kearney case has been viewed as a leading case in this country for its well-reasoned opinion. Smith, "Where There is a Will, There is a ..." Burden of Proof; or Was Cornelius Sheehan Unduly Influenced. 14 Miss. L.J. 103 (1941). An outline of such a lawsuit is discussed.
After the probate of a will, a contestant files a petition to contest the will, thereby joining the issue of devisavit vel non. Notwithstanding the fact that a contestant files the petition, the order of presenting proof at trial begins with the proponent of the will as he has the burden of proof. The burden of proof is met by the offering and receipt into evidence of the will and the record of its probate. A prima facie case is made by the proponent solely by this proof. As stated in Sheehan, supra, "Now, when the proponent of a will offers the will and the record of its probate, a presumption is thereby raised that the alleged testator had testamentary capacity, and this presumption satisfies the burden of proof in that respect; ... the production of such will and such record of probate, under our statute, raises the presumption that the alleged will was the free and voluntary act of the alleged testator."
Upon the presentation of such proof, the proponent has satisfied his initial burden by the application of the presumption. The contestants then must offer proof to overcome the prima facie case. The burden of proof is still with the proponent, but the burden of going forward with proof of undue influence, or lack of testamentary capacity, or other defense, shifts to the contestants.
In the case sub judice, the proponent admitted the fact that there was a confidential relationship with his aunt. The facts testified to warranted this conclusion even if Sellers had not made that admission. The chancellor also found as a fact in his opinion that the confidential relationship existed.
Under the case law of our state, the existence of a confidential or fiduciary relationship gives rise to a presumption of undue influence. Meek v. Perry, 36 Miss. 190 (1858); Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959). The proof of the confidential relationship proves the undue influence by the imposition of the presumption. Clearly here the contestants met their burden of going forward with the proof in establishing the confidential relationship.
The chancellor in his ruling that there was no proof of undue influence was manifestly wrong. The ruling overlooks the presumption of undue influence that the law imposes where a confidential or fiduciary relationship exists. Therefore, the granting of the motion to dismiss at this point of the trial was error. The contestants had complied with their duty at trial.
At retrial, however, the proponent is entitled to present rebuttal proof answering this presumption of undue influence. The proponent may attempt to overcome, if at all, by clear and convincing evidence of:
(1) Good faith on the part of the grantee/beneficiary;
(2) Grantor's full knowledge and deliberation of his actions and their consequences; and
*1015 (3) Advice of (a) competent person, (b) disconnected from the grantee and (c) devoted wholly to the grantor/testator/s interest. Wofford v. Wofford, 244 Miss. 442, 142 So.2d 188 (1962); Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959), Thomas v. Jolly, 251 Miss. 448, 170 So.2d 16 (1964), Hendricks v. James, 421 So.2d 1031 (Miss. 1982).
The offering of the above proof in rebuttal is proper and withstands an objection that it should have been offered in the proponents' case in chief. Sheehan v. Kearney, supra; Runyan v. Price, 86 Am. Dec. 459; In Re Layman's Will, 40 Minn. 371, 42 N.W. 286 (1889).
The type of proof necessary to overcome the presumption of undue influence has recently been addressed by this Court in Murray v. Laird, 446 So.2d 575 (1984), as follows:
(1) Important factors on the question of good faith are, (a) the determination of the identity of the initiating party in seeking preparation of the instrument, (b) the place of the execution of the instrument and in whose presence, (c) what consideration and fee were paid, if any, and (d) by whom paid, and (e) the secrecy or openness given the execution of an instrument. The Court recognizes that prior disclosure of a donation is not a prerequisite to its validity; but the disclosure of intent made prior to execution of an instrument helps dilute the undue influence presumption.
(2) Factors important to address the grantor/testator's knowledge, at the time of execution of any instrument are (a) his awareness of his total assets and their general value, (b) an understanding by him of the persons who would be the natural inheritors of his bounty under the laws of descent and distribution or under a prior will and how the proposed change would legally affect that prior will or natural distribution, (c) whether non-relative beneficiaries would be excluded or included and, (d) knowledge of who controls his finances and business and by what method, and if controlled by another, how dependent is the grantor/testator on him and how susceptible to his influence.
The guidelines of our prior cases suggest that the testator/grantor should give a thoughtful deliberation to all of these factors. No set amount of time is stated as required, but a positive factor to overcome the undue influence presumption is a mature and thoughtful weighing of the legal consequences of a grantor/testator's action.
(3) Turning now to the last factor to be discussed, (a) advice of a competent person, (b) disconnected from the grantee, and (c) devoted wholly to the grantor/testator's interest, we note three factors to meet. The advisor has to have conferred with the grantor/testator prior to the document drafting. McDowell v. Pennington, supra. However, "independent" advice in this sense means advice separate and apart from the beneficiary, both in the initiation and execution of the instrument.
The participation of the beneficiary/grantee, or someone closely related to the beneficiary, arouses suspicious circumstances that negate independent action. McDowell v. Pennington, supra; Croft, supra.

As a necessary adjunct to "advise and counsel", an advisor must have (a) knowledge upon which to base advice. Therefore, all factors previously named above with reference to the grantor/testator's full knowledge of his circumstances and the grantee/beneficiary's good faith must also be delved into by the advisor as a basis for his recommendation. The advisor needs to (b) know of the relationship of the grantor/testator to any beneficiary/grantee and the purpose or reason of an unequal division or distribution to donees/heirs of the same class, (c) the relationship of the non-blood donee and the duration of that relationship; (d) the relationship, or lack of relationship, to kinsmen, (e) knowledge of tax consequences, (f) information as to the marital background, age, physical and mental *1016 health of a grantor/testator. (g) Inquiry by the advisor into whether the disposition is the free and voluntary act of an independent thinking, strong willed individual or whether the decision is imposed by the dominance of an over-reaching person will help him render better advice. All of these factors will help the advisor learn of antecedent agencies that gave rise to the presumption of undue influence.
Since the chancellor dismissed the case before the proponents put on their case in chief, it is remanded for retrial in line with the above ruling.

III.
As this case is remanded by retrial, we address only briefly the remaining assignments of error.
Regarding the exclusion of the contestants' testimony concerning the establishment of their claim against the estate under the Dead Man's Statute, Mississippi Code Annotated section 13-1-7 (1972), the Court properly excluded this testimony as to matters that arose in the lifetime of the deceased to establish their own claim. Webster v. Kennebrew, 443 So.2d 850 (Miss. 1983).
There is no merit in this objection.
As to the exclusion of the hospital records, the Court notes that the appellants' petition alleged mental incapacity of the testatrix. Under this allegation introduction of hospital records for that purpose may be admissible, if otherwise not inadmissible. Ross v. Miller, 441 So.2d 541 (Miss. 1983).
REVERSED AND REMANDED FOR A NEW TRIAL.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.